**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joshua Idlefonso Villalobos, | No. CV-17-00633-PHX-DJH |
| Petitioner, | **ORDER** |
| v. | |
| Attorney General of the State of Arizona, et al., | |
| Respondents. | |

This matter is before the Court on Petitioner Joshua Idelfonso Villalobos's ("Petitioner") *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) ("Petition"), filed on March 3, 2017. (*Id.* at 26). On May 20, 2021, United States Magistrate Judge Camille D. Bibles issued a Report and Recommendation ("R&R") in which she recommended that the Petition be denied (Doc. 68). Represented by appointed counsel, Mr. Villalobos filed Objections (Doc. 73), to which Respondents Replied (Doc. 76).

I.   **Background**[1]

In an order affirming Petitioner's convictions and sentence, the Arizona Supreme Court set forth the facts of Petitioner's case as follows:

---

[1] In the R&R, the Magistrate Judge set forth a concise and accurate summary of the background of this case. (Doc. 68 at 1–5). Petitioner does not object to the background facts in the R&R. (*See* Doc. 73). The Court finds that these facts are supported by the record and incorporates them here. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985) (noting that the relevant provision of the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all . . . of any issue that is not the subject of an objection"). The Court summarizes the relevant facts here for context and clarity.

1
2
3
4
5

Villalobos lived with Annette Verdugo, five-year-old Ashley Molina (Verdugo's daughter), and the couple's two-year-old daughter. On January 3, 2004, Villalobos and the children picked Verdugo up at work and took her to dinner. Ashley did not eat and complained about stomach pains. Villalobos and the children again picked Verdugo up from work after her shift ended in the early morning of January 4. When Verdugo noted an odd smell, Villalobos claimed he had vomited in the car.

6
7

When they arrived home, Villalobos carried Ashley upstairs and put her to bed. At approximately 7 a.m., Villalobos told Verdugo that Ashley was unresponsive. Ashley's body was cold and hard. Villalobos told Verdugo "they're going to think it's me, I was the only one with her."

8
9
10
11
12
13
14

After some delay, Villalobos and Verdugo took Ashley to the hospital. The emergency room physician recognized immediately that Ashley was dead; she found "somewhere between 150 to 200 bruises" on Ashley's body. After Villalobos told the physician that the bruises were from a fall in the shower, Phoenix police were summoned. Villalobos was taken to the police station and given Miranda warnings. Villalobos denied hitting Ashley, and a detective asked him to take a polygraph examination. Villalobos agreed. During the examination, Villalobos initially denied injuring Ashley. When the polygrapher accused him of lying, Villalobos admitted that he had punched Ashley.

15
16
17

After the polygraph, a second detective resumed the interrogation. Villalobos admitted that, before Verdugo's dinner break, he had grabbed Ashley by the arm and hit her several times with a closed fist. Villalobos also said that Ashley had passed out in the car and then vomited on him while he was picking Verdugo up from work.

18
19
20
21

The medical examiner who conducted the autopsy later concluded that Ashley had died of blunt force trauma to the abdomen. He opined that Ashley could have survived for no more than four hours after the fatal injuries and had died between five and eight hours before being taken to the hospital. The autopsy also revealed other internal injuries that predated the fatal injuries.

22
23

A grand jury indicted Villalobos for child abuse and first degree murder.  Verdugo was indicted for second degree murder and child abuse. She later pleaded guilty to attempted child abuse and testified at Villalobo's trial.

24
25
26

A superior court jury found Villalobos guilty on both counts . . . After the penalty phase, the jury concluded that any mitigating circumstances were not sufficiently substantial to call for leniency and death was the appropriate sentence.

27
28

(Doc. 14-1 at 2–4).   The Arizona Supreme Court affirmed Petitioner's convictions and

sentences on appeal.   (*Id.* at 25).   The United States Supreme Court subsequently denied

1   Petitioner's writ of certiorari.  (Doc. 14-4).

2       Petitioner filed a notice of post-conviction relief in Arizona state court on January

3   20, 2011.  (Doc. 14-5).  The postconviction court granted an evidentiary hearing on four of

4   Petitioner's claims and denied the remaining claims on the briefing, including Petitioner's

5   arguments that his appellate counsel was ineffective for failing to argue that the trial court

6   improperly limited his cross-examination of Verdugo, and that the cumulative errors by

7   counsel unconstitutionally prejudiced the guilt phase of his trial.  (Doc. 18-2 at 5–6).[2]  Two

8   of the claims the court granted an evidentiary hearing on—trial counsel's ineffectiveness

9   in failing to hire a pathologist to challenge the medical examiner's testimony; and appellate

10  counsel's ineffectiveness in failing to argue on direct appeal that the trial court erred in

11  denying Petitioner's request for a lesser-included instruction on the felony murder child

12  abuse charge—are at issue in Petitioner's federal habeas petition.  (*Id.*; Doc. 1).  Following

13  the July 14 and 15, 2014, evidentiary hearing, the state PCR court denied these remaining

14  claims.  (Doc. 19).  Petitioner appealed to the Arizona Supreme Court; on September 22,

15  2015, the Arizona Supreme Court summarily denied review.  (Doc. 20-3).

16      Petitioner filed the instant habeas petition on March 1, 2017.  (Doc. 1).

17  **II.   The Petition**

18      Petitioner raises four grounds for relief in his federal habeas petition, which he filed

19  *pro se*.   First, he claims that his trial counsel was ineffective for failing to retain a

20  pathologist who would have helped him prove that he "did not cause the fatal injury" and

21  would have assisted in the cross-examination of the state's pathology expert

22  ("Ground One").  (Doc. 1 at 6).   Second, Petitioner says that he was denied effective

23  assistance of appellate counsel when his counsel failed to argue on appeal that the trial

24  court erred by refusing to give a lesser-included instruction for reckless child abuse

25  _____

26  [2] Following the order granting Petitioner an evidentiary hearing, on February 27, 2014, the
    parties stipulated to vacate the death sentence and asked the post-conviction court to order
27  a new penalty phase, which it did. (Docs. 18-4; 18-5).  Petitioner's new penalty phase trial
    began on August 1, 2016. (Doc. 20-4).  The jury determined that Petitioner should be
    sentenced to life in prison. (Doc. 20-5).  On November 1, 2016, the trial court sentenced
28  Petitioner to a term of imprisonment of natural life. (Doc. 20-6).  Petitioner did not appeal
    his sentence to the Arizona Court of Appeals.

1  ("Ground Two").  (*Id.* at 7).  Third, Petitioner claims he was denied effective assistance of
2  appellate counsel when appellate counsel failed to argue the trial court erred in refusing
3  Petitioner the right to cross-examine his "co-defendant Verdugo about bias and a motive
4  to lie" ("Ground Three").  (*Id.* at 8).  Finally, Petitioner argues that he is entitled to habeas
5  relief because the cumulative effect of his trial and appellate counsels' deficient
6  performance has deprived him of the effective assistance of counsel ("Ground Four").  (*Id.*
7  at 9).  Respondents filed a Response (Docs. 11–21).  Petitioner was subsequently appointed
8  counsel (Doc. 24).  After requesting multiple extensions of time,[3] and after several changes
9  in appointed counsel (Docs. 24; 39; 47), Petitioner filed a 65-page counseled Reply in
10  support of his Petition (Doc. 63).

11  **III.  The R&R**

12      In reviewing Petitioner's federal habeas claims, Magistrate Judge Bibles noted that
13  each Ground had been raised and resolved on the merits in the state courts.  She found
14  reason to defer to the state court decision on each claim under 28 U.S.C. § 2254(d).
15  (*See* Doc. 68 at 12, 14, 16–17, 19).  She therefore recommends denial of the Petition.  She
16  also recommends denying a certificate of appealability because Petitioner has not made a
17  substantial showing of the denial of a constitutional right.  (*Id.* at 26).

18  **IV.  Standards of Review**

19      This Court must "make a *de novo* determination of those portions of the report or
20  specified proposed findings or recommendations to which" a Petitioner objects.  28 U.S.C.
21  § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de*
22  *novo* any part of the magistrate judge's disposition that has been properly objected to.");
23  *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (same).
24  Further, this Court "may accept, reject, or modify, in whole or in part, the findings or
25  recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ.
26  P. 72(b)(3).  At the same time, however, the relevant provision of the Federal Magistrates

---

[3] Petitioner's Reply was originally due on September 1, 2017.  After counsel was appointed, Petitioner requested a 120-day extension to file a Reply (Doc. 26).  The Court granted this request, as well as the ten subsequent requests for extensions of time to file a Reply.  (Docs. 27; 29; 31; 34; 37; 39; 44; 52; 55; 57; 59).

Act, 28 U.S.C. § 636(b)(1)(C), "does not on its face require any review at all. . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1989); *see also Wang v. Masaitis*, 416 F.3d 992, 1000 n. 13 (9th Cir. 2005) ("Of course, *de novo* review of a R&R is only required when an objection is made to the R&R").

## V.    Petitioner's Objections to the R&R

As noted, Magistrate Judge Bibles found that each of Petitioner's ineffective assistance of counsel habeas claims had been resolved on their merits by the state court; with one exception, Petitioner does not assert otherwise.   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is foreclosed for "any claim that was adjudicated on the merits in State court" unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The "clearly established federal law" for an ineffective assistance of counsel claim under the Sixth Amendment derives from *Strickland v. Washington*, 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (noting that "[t]here is no dispute" that *Strickland* is clearly established federal law).  *Strickland* sets out a two-part test for courts to consider when determining if trial counsel has been unconstitutionally ineffective.  First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Second, "the defendant must show that the deficient performance prejudiced the defense.   This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.  Strickland* requires that a defendant prove that his "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.  When the claims have been resolved under *Strickland* by a state court, as they have here, habeas review of

the ineffective assistance of counsel claims is subject to double deference because the court must give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013)*; see also Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."); *Murray v. Schriro*, 882 F.3d 778, 826 (9th Cir. 2018) (noting "the double deference applicable to AEDPA claims of ineffective assistance of counsel").

A federal habeas court assessing a state court's decision under § 2254 will look to the last reasoned state court decision on the particular claims at issue to assess any incongruence with § 2254. *See Castellanos v. Small*, 766 F.3d 1137, 1145 (9th Cir. 2014). In this case, those decisions are the postconviction review ("PCR") court's (1) August 20, 2013, Pre-Evidentiary Hearing PCR Ruling (Doc. 18-2); and (2) December 17, 2014, Post-Evidentiary Hearing PCR Ruling (Doc. 19-3). Petitioner objects to the R&R on the grounds that the PCR court decisions were contrary to *Strickland*, and that the state court misapplied its principles and unreasonably determined facts. Petitioner argues that this Court should resolve his ineffective assistance of counsel claims "without the deference [to the state court] AEDPA otherwise requires." *Panetti v. Quarterman*, 551 U. S930, 953 (2007).

The Court has considered Petitioner's objections and reviewed the R&R *de novo*. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). For the following reasons, the Court amends the R&R in part, overrules Petitioner's objections, and adopts the remainder of the R&R as the Order of this Court.

### 1.      Ground One – Failure of Trial Counsel to Retain Pathology Expert

Magistrate Judge Bibles recommends denying relief pursuant to Ground One—trial counsel's failure to retain a pathology expert—because the state court's denial of this claim was not an unreasonable application of *Strickland*. (Doc. 68 at 11). She also concluded that the state court's prejudice determination was not contrary to clearly established federal law. (*Id.* at 19). Petitioner objects to the Magistrate Judge's deference to the state court

decision asserting that Judge Bibles did not address certain arguments made in his Reply and that the state court's prejudice determination was based on numerous unreasonable determinations of fact under 28 U.S.C. § 2254(d)(2). (Doc. 73 at 5). He also argues that the Magistrate Judge conducted a "flawed analysis" of whether the PCR court's decision was an unreasonable application of clearly established Federal law under the second prong of § 2254(d)(1). (*Id.* at 6–8).

### A. The State Court's Decision on Petitioner's Ineffective Assistance of Trial Counsel for Failure to Retain a Pathology Expert Was Not Contrary to Clearly Established Federal Law

Petitioner first objects to the R&R on the grounds that the Magistrate Judge did not address the argument—made for the first time in his Reply brief—that the state court's decision to deny his ineffective assistance of counsel claim was "contrary to" clearly established Federal law.[4]

Whether federal law is "clearly established" is a threshold issue that must be addressed before a court may conduct a § 2254 merits assessment. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "[C]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings" of Supreme Court decisions; it does not include Supreme Court dicta or circuit precedent. *White v. Woodall*, 572 U.S. 415, 419–20, n.2 (2014) (internal citations omitted); *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam).

A state court decision can be "contrary to" clearly established Supreme Court precedent in two ways: "if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*,

---

[4] Arguments advanced for the first time in a Reply brief need not be addressed by the Court, as Respondents have not had an opportunity to respond to them. *See e.g.*, *Marlyn Nutraceuticals, Inc. v. Improvita Health Products*, 663 F. Supp. 2d 841, 848 (D. Ariz. 2009) ("The Court need not consider Defendants' position . . . since it was first raised in their reply brief. Thus, even if the argument has merit, this Court cannot appropriately consider it, since Plaintiffs did not have the opportunity to respond.") (citation omitted). Recognizing that Petitioner was appointed counsel after the filing of his Petition, the Court has nevertheless reviewed his Reply arguments.

529 U.S. 362, 405–06 (2000)).

In his Reply, Petitioner argues "the state court's decision concerning *Strickland* was contrary to clearly established federal law in at least three ways." (Doc. 63 at 37).   He argues that (1) the state court improperly invented arguments the prosecution would have made in finding no prejudice resulted from counsel's error; (2) that contrary to governing law, the state court's analysis of prejudice was piecemeal and not cumulative; and (3) that the state court held Petitioner to a higher standard than the "reasonable likelihood" standard set out in *Strickland*. (*Id.* at 37–39).  In his Objection, he argues that the Magistrate Judge ignored these arguments.

Petitioner's first argument that Ninth Circuit law prohibits a state court considering an IAC claim from "invent[ing] arguments the prosecution could have made if it had known its theory of the case would be disproved" is not reflected in the record or contrary to any Supreme Court precedent. (Doc. 63 at 37).  Petitioner cites *Hardy v. Chappell*, 849 F.3d 803, 818 (9th Cir. 2019) as support for this rule.  (*Id.*)  Petitioner argues the state court went afoul of this rule by "improperly considered the impact not *just* of the missing defense evidence on the prosecution's trial presentation, but on all of the PCR evidentiary hearing evidence, including testimony from a prosecution rebuttal witness." (Doc. 63 at 37–39). The Court finds this argument unpersuasive.  As an initial matter, *Hardy* is not Supreme Court precedent that binds the state court, and thus the state court could not have erred by failing to apply a rule stated therein, much less one that was articulated years after a decision on this IAC claim.  *White*, 572 U.S. at 419–20 & n.2.  *See also Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam) (stating that circuit decisions may not "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the] Court has not announced"); *Parker*, 567 U.S. at 49 (holding the Sixth Circuit erred in applying its circuit's "multistep test" that bore little semblance to the general rules announced by the Supreme Court); *Andrade*, 538 U.S. at 71–72 ("'[C]learly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court *at the time the state court renders its decision*.") (emphasis

- 8 -

added).  But to the extent that Petitioner invokes statements from *Hardy* that reference *Strickland* standards, which is the governing federal law on the issue, the Court finds that the state court decision was not contrary to the precedent decision.

When considering whether a habeas petitioner was prejudiced by his trial counsel's performance, *Strickland* instructs that "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695.  In doing so, *Strickland* requires that a court assessing the prejudice consider "the totality of the evidence" before the jury.  *Id*.

> Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by the errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

466 U.S. at 695–96.  Upon reviewing the PCR court order, the state court did so.  The PCR court did not err when it considered Petitioner's two medical PCR experts' reports and the State's rebuttal expert in determining how trial counsel's failure to offer a pathology expert at trial likely affected Petitioner's ultimate guilt.  *Strickland* instructs courts assessing the prejudice prong of an IAC claim to consider the totality of the evidence.  Moreover, ultimately, the state court did not exclusively rely on arguments that "could have" been made had a defense pathologist been called, but found that calling a second pathologist would not have refuted "key trial evidence":

> that defendant was alone in the apartment with the two children during the early evening hours; that during that time the defendant struck the victim with a closed fist; that the blow caused a shortness of breath; that the child refused to eat at dinner time, and later appeared somewhat lethargic, to the extent that defendant attempted to confirm that she was still breathing; that the child vomited on defendant and that he mis-attributed the resulting odor to himself when questioned by the child's mother; that an abdominal injury

could have contributed to, or resulted in, the child's death; and that defendant either initiated – or continued – a chain of events that culminated in the child's death.

(Doc. 19-3 at 22–23).  The state court concluded that "[e]ven with a defense pathologist's testimony, the guilty verdict would not change.  The Court finds that given the overwhelming evidence supporting the finding of guilt, additional testimony from a defense pathologist would not have changed the jury's verdict.  To find otherwise would be speculation by the Court."  (*Id.* at 23).  In other words, the court found the unaffected findings of fact supported the "overwhelming record" of guilt.  *Strickland*, 466 U.S. at 695.  The state court's determination that trial counsel's failure to call a pathology expert was unlikely to affect the judgment was not contrary to clearly established federal law.

Second, Petitioner criticizes, as contrary to clearly established federal law, the state court's analysis of prejudice as "piecemeal" and conclusively states that "the state court considered the prejudice resulting from trial counsel's failure to retain a pathologist in a vacuum."  (Doc. 63 at 38).[5]  Petitioner cites to *Kyles v. Whitley*, 514 U.S. 419, 436 (1995), for the "clearly established" Federal law that the prejudice caused by counsel's failures must be "considered collectively, not item-by-item."  The *Kyles* court made this statement when assessing the materiality of evidence wrongfully suppressed under *Brady v. Maryland*, 373 U.S. 83 (1963).  *Id.* at 437–38.   This case is not, therefore, "clearly controlling" Supreme Court precedent on the issue of prejudice resulting from deficient attorney performance; instead, that determination is to be made under *Strickland*'s "totality of the evidence" standard.  Here, in assessing the prejudicial effect counsel's failure had on the jury's determination of guilt, the court systematically went through the reports of the defense's two PCR medical experts, as well as the rebuttal expert called by the State.  (Doc. 19-3 at 21–23).  The judge ultimately determined that even had a pathology expert been called in trial, the overwhelming evidence would not have changed the verdict.  In

---

[5] This argument overlaps with Petitioner's objection that the state court erred by not considering the prejudice from counsels' alleged deficient performance errors cumulatively and is discussed (and rejected) in Section V.4, *infra*.

- 10 -

doing so, the judge did not take a "piecemeal" approach, but in line with *Strickland*, looked at the "totality of the evidence" and how the findings from the Petitioner's PCR expert would (and would not) have affected the findings that were made in trial.  Petitioner's objection is overruled.[6]

Finally, the Court rejects Petitioner's contention that the state court judge held Villalobos to a higher standard than the "reasonable likelihood" standard set out in *Strickland*.  (Doc. 63 at 38).[7]  Petitioner argues that the state court's statements that "a pathologist would not have definitively established that 'someone other than defendant inflicted the fatal injury' [and] 'additional testimony from a defense pathologist would not have changed the jury's verdict'" show that the Court improperly placed a higher burden on Petitioner than required under *Strickland*.  (Doc. 63 at 38 (citing language from state court order at Doc. 19-3 at 3 and 23)).

Petitioner is correct in that he does not have the burden of "definitively" establishing that the jury would have found someone else inflicted the fatal injury.  Under *Strickland*, a defendant only has the burden "of showing that the decision reached would *reasonably likely* have been different absent the errors."  466 U.S. at 696 (emphasis added).  However, and notwithstanding the wording used by the state court in its summary conclusions, a review of the state court's methodology in assessing whether Petitioner was prejudiced by his trial counsel's failure to call a pathology expert reasonably shows that the court properly applied *Strickland*'s probability standard.

First, the state court order, as Petitioner concedes, states the proper *Strickland* standard for assessing prejudice.  *See* Doc. 19-3 at 19 (stating, "[t]o establish prejudice, the

---

[6] Contrary to Petitioner's contentions, the Magistrate Judge extensively addressed this argument.  (*See* Doc. 68 at 19–25 (discussing the difference of opinion between circuit courts and a lack of Supreme Court precedent on the issue of whether federal courts in § 2254 actions may cumulatively assess an attorney's errors in determining whether there is *Strickland* prejudice)).  The Court has reviewed this analysis (Doc. 68 at 19–25) and agrees with its conclusion that the state court's prejudice determination was not "piecemeal" in a manner contrary to *Strickland*.

[7] The state court plainly cited and referred to *Strickland* in its order; Petitioner's argument seems to be that the state court unreasonably applied the burden imposed on defendants under *Strickland*, not that the decision was contrary to clearly established Supreme Court precedent, which again, was an argument the Magistrate Judge addressed in her R&R.

defendant must show, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . Under this standard, the court asks whether it is 'reasonably likely' the result would have been different. . . .That is, only when '[t]he likelihood of a different result [is] substantial, not just conceivable, [] has the defendant met *Strickland*'s demand that defense errors were 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.") (internal citations and quotations omitted)).  The state court then analyzed the prejudice suffered by assessing what expert testimony may have been offered had trial counsel performed effectively and whether that testimony was strong.  Specifically, the court noted that a defense pathologist "could have eliminated the State's theory that—based on [the state's pathology expert's] timing of the injuries—two incidents occurred that evening: a closed fist injury and then a beating." (Doc. 19-3 at 21).   It further noted that, "[e]xpanding the timeframe during which the injuries occurred could also have served to implicate another, the child's mother, in contributing to the bruising found on the child." (*Id.*)  The court noted that the pathology experts disagreed not on the injuries themselves, but what the injuries could tell them about when they were inflicted. (*Id.* at 22).  Each conceded that a closed fist punch to the child's abdomen by an adult could have caused her injuries and death, however. (*Id.*)  And it found that Petitioner's admission of hitting the child with a closed fist blow in the abdomen the evening before her death could have helped narrow the timing of the fatal injury. (*Id.*)  The court further noted that the State's rebuttal PCR expert "addressed and discounted [Petitioner's PCR expert]'s hypotheses of alternative scenarios resulting in death." (*Id.*)

Importantly, however, the court also assessed the strength of other trial evidence that would not have been affected by a defense pathologist expert.  The court found that "a second pathologist would not have refuted certain key trial evidence," and it identified multiple facts in the record that would be unaffected by a pathologist expert's testimony disputing or raising questions as to the timing of the fatal injuries.  (*Id*. at 22–23).  The court concluded that "given the overwhelming evidence supporting the finding of guilt, additional testimony from a defense pathologist would not have changed the jury's

1   verdict." (*Id.* at 23).  The methodology used by the court in assessing the conflicts in the

2   expert testimony, as well as the strength of other, unaffected evidence, supports the

3   conclusion that the court did not hold Petitioner to a higher standard.  Rather, the court

4   concluded that the guilty verdict would not have reasonably likely been different had a

5   pathology expert been called to testify on Petitioner's behalf.

6       When "it is possible to read the state court's decision in a way that comports with

7   clearly established federal law," a court must do so.  *Mann*, 828 F.3d at 1157–58.  A

8   reasonable reading of the PCR court ruling shows that the state court did not hold Petitioner

9   to a higher standard of proof than what is required under *Strickland* to show prejudice

10   stemming from ineffective assistance of counsel.  This objection is therefore also

11   overruled.  The R&R will be amended to address this argument.

### B.   The State Court's Prejudice Determination on Ground One Was Not Based on Unreasonable Determinations of Fact

12
13

14       Petitioner also objects to the Magistrate Judge's Ground One recommendation

15   because it did not address his argument that the state court's prejudice determination was

16   based on "numerous unreasonable determinations of fact (including facts taken from

17   another case entirely)." (Doc. 73 at 5).

18       Under § 2254(d)(2), habeas relief is available if the state court decision was based

19   on an unreasonable determination of the facts.  However, a court may not characterize a

20   state court's factual determinations as unreasonable "merely because [a court] would have

21   reached a different conclusion in the first instance." *Brumfield v. Cain*, 135 S. Ct. 2269,

22   2277 (2018) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)).  "Instead, § 2254(d)(2)

23   requires that [a court] accord the state trial court substantial deference." *Id.* Though

24   "[r]easonable minds reviewing the record might disagree" about a factual finding, "on

25   habeas review that does not suffice to supersede" the state court's determination." *Rice v.*

26   *Collins*, 546 U.S. 333, 341–42 (2006).  *See also Taylor v. Maddox*, 366 F.3d 992, 1000

27   (9th Cir. 2004) (explaining that to satisfy § 2254(d)(2) a federal habeas court "must be

28   convinced that an appellate panel, applying the normal standards of appellate review, could

not reasonably conclude that the finding is supported by the record"), *overruled on other*

1    *grounds by Murray (Robert) v. Schriro*, 745 F.3d 984, 999–1000 (9th Cir. 2014); *McGill*

2    *v. Shinn*, 16 F.4th 666 (9th Cir. 2021) (noting that § 2254(d)(2) standard is met in

3    "relatively few cases") (*quoting Taylor*, 366 F.3d at 1000).

4           The Court summarily rejects Petitioner's argument that the PCR court improperly

5    considered or confused facts from *State v. Jones*, 937 P.2d 310, 321 (Ariz. 1997),  in

6    assessing the prejudice of trial counsel's failure to call a pathology expert.  The court's

7    footnote citation to *Jones* was intended to bolster a point of law on an entirely different

8    issue.  Specifically, during the state court's assessment of whether the trial court erred in

9    failing to give a lesser-included instruction, it discussed Petitioner's counsel's trial

10   strategy; one of which was to shift the blame to the mother.  (Doc. 19-3 at 29).  The court

11   included a footnote in which it block-quoted language from *State v. Jones* that discussed

12   the applicability of a "*Enmund-Tison*" finding, a finding that must be made before the death

13   penalty may be imposed against a defendant.  (*Id.*)  In doing so, the court accurately quoted

14   and cited to *Jones*.  (*Id.* at 29–30).  Despite the factual similarities between *Jones* and

15   Petitioner's case, there is nothing in the state court order indicating that it improperly

16   confused the cases, or inserted facts from *Jones* to Petitioner's case.  The block quote in

17   question, which included the *Jones* court's analysis of those facts, was unambiguously

18   from the *Jones* case.  This objection is overruled.

19          Petitioner also argues that the state court erred when it "ignored key testimony from

20   defense expert Dr. Ophoven."  (Doc. 63 at 49).  Dr. Ophoven testified for the defense at

21   the PCR evidentiary hearing.  Petitioner argues that the court "ignored Dr. Ophoven's

22   testimony that the fatal internal injuries to the mesentery and liver occurred *weeks before*

23   Ashley's death" and "ignored Dr. Ophoven's testimony that there was *no evidence* of any

24   new injury within 24 hours of death."  (Doc. 63 at 49).   On review of the state court

25   opinion, however, this is also inaccurate.  In reviewing the different testimony provided by

26   the pathology experts as to what the child's injuries could say about the timing they were

27   inflicted, the PCR court stated that "Defendant's admission to hitting the child with a closed

28   fist in the early evening hours while mother was at work provides assistance with the

timing." (Doc. 19-3 at 22).  It noted, "Dr. Ophoven, who found no '. . . evidence that there was a fatal injury that resulted in her deterioration on that day,' conceded on cross-examination that '[s]etting aside questions of timing . . . a single blow from an adult, a close-fisted blow, could have caused these injuries" to the victim.  (Doc. 19-3 at 22).  The court further noted that Dr. Keen, the State's PCR rebuttal expert "addressed and discounted Dr. Ophoven's hypothesis of alternative scenarios resulting in death."  (*Id.*) The court therefore did not ignore Dr. Ophoven's testimony, it simply chose to assign more weight to other evidence—most notably, Petitioner's admission to hitting the child in the stomach the evening prior to her death—in determining whether Petitioner was prejudiced by his attorney's failure and considering the experts' conflicting testimony.  This Court will not second-guess the state court's otherwise reasonable fact-finding process. *Brumfield*, 135 S. Ct. at 2277 (noting that though reasonable minds may disagree, the state court findings are to be afforded deference).

Finally, Petitioner says that the state court improperly based its decision on facts that were not in the record.  (Doc. 63 at 49).  Petitioner first argues the court erroneously found that Petitioner "admitted striking the victim with a closed fist during the early evening hours, at around 5 p.m," but the record reflects that this happened after Verdugo's 8 p.m. lunch break.  (Doc. 62 at 50).  Petitioner says this error is material because it "allowed the state court to attribute Ashley's lack of appetite during the 8 p.m. lunch break to Villalobos striking her beforehand, rather than to a longstanding internal injury" and "it meant the court might have viewed as corroborating evidence the neighbor's testimony that he heard banging in the apartment before 6:30 p.m."  (Doc. 63 at 50).  Petitioner says his statements to officers the night of the victim's death support that he struck the child after 8 p.m.. (*Id.*)

The Court has reviewed the relevant colloquy and finds that reasonable minds could disagree as to when Petitioner stated he hit the child.  At one point during the interview, the officer attempts to clarify when Petitioner hit Ashley, and Petitioner says, "It was before I went for her" ("her" being mother).  The officer then says, "Okay, so it started after you

dropped her mom off at work?" and Petitioner replies, "Not right after."  (Doc. 63-27 at 93).  Since mother started her shift at 4 p.m., a reasonable reading of these statements is that sometime after Petitioner dropped her off to start her shift, Petitioner and the girls returned home, the girls started arguing, and Petitioner punched the victim in the stomach as punishment.  There is support for the court's determination that Petitioner struck the victim in the stomach "during the early evening hours, at around 5 p.m" and therefore any subsequent conclusions drawn from that fact were not in error.

Petitioner similarly argues that the state court's decision was unreasonable because it accepted the State's trial expert pathologist's hypothesis that one of Ashley's abdominal injuries could have been caused by a closed fist as "proven fact."  (Doc. 63 at 50 citing Doc. 19-3 at 3).  Petitioner says "[t]he court's acceptance of this mere hypothesis as proven fact affected led [sic] it to the unsupported conclusion that it was Villalobos striking Ashley that caused her internal injuries . . . And that conclusion, in turn, led the court to deny relief by finding that the PCR evidentiary hearing testimony would not have rebutted the fact that the admitted punch either 'initiated. . . or continued a chain of events that culminated in the child's death." (*Id.*)  In reviewing the opinion, this Court disagrees with how Petitioner characterizes the state court's treatment of Dr. Zhang's testimony.  The PCR court merely stated, "Dr. Zhang testified about medical evidence related to the closed fist injury," an injury Petitioner confessed to inflicting. (Doc. 19-3 at 4).  The state court understood that there was a dispute as to which injuries caused Ashley's death, however, it found that Dr. Zhang's testimony, coupled with Petitioner's admission to striking Ashley with a closed fist, was persuasive in assessing the cause of her death.  The court did not merely adopt Dr. Zhang's hypothesis as a "proven fact."

The state court's prejudice determination as to Ground One was not based on any unreasonable determinations of fact.  This objection is overruled.   The R&R will be amended to address this argument.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      The State Court's Prejudice Determination Was Not an Unreasonable Application of Clearly Established Federal Law Under 28 U.S.C. § 2254(d)(1)**

Petitioner also objects to the R&R's conclusion that the state court did not unreasonably apply *Strickland* when it determined Petitioner did not suffer prejudice by trial counsel's failure to call a pathology expert.  (Doc. 73 at 6).

Under the "unreasonable application" prong of § 2254(d)(1), relief is available where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  *Williams v. Taylor (Terry Williams)*, 529 U.S. 362, 407 (2002).  The Supreme Court has emphasized that under § 2254(d)(1) "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Id.* at 410 (O'Connor, J., concurring).  To obtain habeas relief, therefore, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (per curiam); *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). The burden is on the petitioner to show "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.  This standard is meant to be "difficult to meet." *Kayer*, 141 S. Ct. at 523 (quoting *Richter*, 562 U.S. at 102).

Petitioner argues that the Magistrate Judge based its conclusion on "a misapprehension of the record" and says contrary to statements in the R&R, "whether a blow administered the evening before Ashley's death could have been the cause of death was firmly in dispute."  (*Id.*)  He states that testimony from the PCR experts "showed that the fatal injuries occurred days or weeks before Ashley's death" and that "the medical evidence did not suggest *any* new injuries in the hours before death."  (Doc. 73 at 7). Petitioner says admission of "[t]his information could well have changed the jury's

- 17 -

decision about whether Villalobos was responsible for the fatal injuries even *assuming* that the jury believed he struck the victim when alone with the children.  For *Strickland* prejudice, all that is required is a reasonable likelihood that a single juror would have harbored a reasonable doubt." (*Id.*)

A review of the state habeas court opinion does not show that the Magistrate Judge based her conclusion on a misapprehension of the record, or that the court unreasonably applied the "reasonable likelihood" standard in *Strickland*.  Petitioner is correct, and the state court recognized, that the "PCR experts focused on the timing of the [abdominal] injury." (Doc. 19-3 at 22).  The state court noted that "[e]xpert testimony could have eliminated the State's theory that—based on Dr. Zhang's timing of the injuries—two incidents occurred that evening: a closed fist injury and then a beating.  Expanding the timeframe during which the injuries occurred could also have served to implicate another, the child's mother, in contributing to the bruising found on the child." (*Id.* at 21).  The state court then went on to note that one defense PCR expert conceded "that an admission from a person admitting to punching [the child] in the abdomen the day before she was pronounced dead. . . could be useful in narrowing down the time frame of when an injury occurred;" and the other defense expert conceded on cross-examination that "[s]etting aside questions of timing, it 'could have been' a single blow from an adult, a close-fisted blow, could have caused these injuries to the victim." (Doc. 19-3 at 22).  The court also noted that the state PCR expert rejected the hypotheses that the child's death was caused by anything other than an internal "bleeding injury." (*Id.*)  Finally, and importantly, the state court found that "a second pathologist would not have refuted certain key trial evidence" that was unaffected by the defense experts' testimony:

> that defendant was alone in the apartment with the two children during the early evening hours; that during that time the defendant struck the victim with a closed fist; that the blow caused a shortness of breath; that the child refused to eat at dinner time, and later appeared somewhat lethargic, to the extent that defendant attempted to confirm that she was still breathing; that the child vomited on defendant and that he mis-attributed the resulting odor to himself when questioned by the child's mother; that an abdominal injury could have contributed to, or resulted in, the child's death; and that defendant

either initiated – or continued – a chain of events that culminated in the child's death.

(Doc. 19-3 at 22–23).   The court concluded that "given the overwhelming evidence supporting the finding of guilt, additional testimony from a defense pathologist would not have changed the jury's verdict."  (*Id.* at 23).

Petitioner plainly disagrees with the state court's conclusion that a defense pathologist would not have likely changed the mind of a juror from guilty to innocent.  But where fair-minded jurists can disagree as to the outcome, a federal court will defer to a state court determination applying the appropriate controlling federal law.  This conclusion is not *objectively* unreasonable, as the Magistrate Judge found.  Petitioner's final objection to Ground One is thus overruled.

### 2.   Ground Two – Appellate Counsel's Failure to Raise Trial Court's Refusal to Instruct on a Lesser-Included Offense

The Magistrate Judge next recommends denying Petitioner's claim for ineffective assistance of appellate counsel for counsel's alleged failure to raise on appeal the trial court's refusal to instruct the jury on a lesser-included offense for child abuse.  The trial court denied defense counsel's request for the lesser-included instruction.   Appellate counsel did not raise the issue on direct appeal, and the PCR court rejected Petitioner's claim that appellate counsel's failure to do so amounted to ineffective assistance of appellate counsel because the claim was ultimately without merit.  Specifically, in its post-evidentiary hearing ruling, the PCR court found that an appellate court would not have found the trial court erred in refusing to give a lesser-included offense instruction of negligent or reckless child abuse for either of the Petitioner's felony murder *or* intentional child abuse charges., and consequently, that appellate counsel did not perform deficiently by failing to raise the issue on appeal.  (Doc. 19-3 at 27).  With regard to the felony-murder charge, the PCR court confirmed that "Arizona felony murder has no lesser-included offenses." (*Id.*)  With regard to the child abuse charge, the PCR court found the trial court properly denied the lesser-included instruction based on reckless or negligent acts because the instruction was unsupported by the evidence presented.  (*Id.* at 30–32).  It noted that

the trial judge, in denying the requested instruction, thought the "defendant was improperly attempting to use his 'continuing misdeeds' in failing to obtain medical treatment for injuries he caused to the victim to escape a murder conviction."  The PCR court stated

> The trial court, when considering how to instruct the jury, considered the evidence presented.  Evidence before the trial court included, in addition to defendant's admission that he struck the child in the stomach on this occasion with a closed fist; that the child lost her breath; evidence that he had bruised the child on previous occasions; that he delayed contacting emergency personnel out of fear; and that he did not mean to kill the child.  Given the number of injuries previously sustained by the child victim and the time period over which they would have occurred, the record demonstrates that defendant's actions evidenced a pattern of behavior over time, rather than merely "reckless" or "negligent" aberrant behavior on a single occasion. Further, the delay in seeking treatment despite ensuring symptoms (lost her breath; complained of being "tired and tired and tired;" seemed not to be breathing; squeezing stomach led to vomiting) coupled with his seeming-awareness of—but denial of—the child's need for treatment (not calling fire department or going to hospital because he was 'scared;' telling mother than he, rather than the child, had vomited) suggest intentional or knowing conduct rather than reckless or negligent behavior.

(Doc. 19-3 at 29).[8]

The PCR court found in light of the evidence before the trial court showing Villalobos' intent, had the Arizona Supreme Court "been asked to consider whether the trial court's denial of defendant's request for lesser included instruction was error, [it] would have reviewed trial court's ruling for an abuse of discretion; the Supreme Court

---

[8] The PCR court also noted that the Arizona Supreme Court—in denying Petitioner's direct appeal claim that the trial court had improperly admitted other bad acts—had held that evidence of Petitioner's bad acts showed defendant had acted intentionally rather than reflexively (and thus would otherwise provide support for a lesser-included instruction of reckless child abuse); for example, the PCR court noted there was bad acts evidence

> showing that shortly before the January 2004 death defendant had violently shaken the child in October 2003; admitted bruising her face and buttocks in November 2003; admitting bruising her face in December 2003; and admitted bruising her arms in the weeks before her death . . . This established his mental state, and also served to rebut his claim that he did not intend to hurt the child had, instead, hit her as a 'reflex,' as well as to rebut his claim that her mother caused the injuries.

(*Id.* at 30-31 (citing *Villalobos*, 235 P.3d at 233)).

would have concluded that the trial court did not abuse its discretion.  Thus, the issue was meritless[, and f]ailure to raise a meritless issue on appeal does not constitute deficient performance by appellate counsel." (*Id.* at 32).  The PCR court further concluded that even it had been error for the trial court to refuse the jury instruction, Petitioner could not have established prejudicial error:

> Under the facts of this case, where an already-injured child died within hours of being struck by a blow inflicted by defendant who was the only adult present—even if the new injury merely exacerbated previously-sustained injuries inflicted by another—the result of the trial would not have changed had the requested lesser-included instructions been given.  Thus, there is no prejudice.

(*Id.* at 33).

Petitioner first objects on the grounds that the "magistrate judge's recommendation that Claim Two be denied appears to be based on a finding that the state court's prejudice determination was reasonable . . . [and so] the magistrate judge does not appear to have reached a conclusion (or recommendation) concerning whether the state court's conclusion on deficient performance was also reasonable." (Doc. 73 at 8).  This objection is overruled; the Magistrate Judge, in reviewing the PCR court's assessment of the IAC claim for failure to raise the lesser-included instruction claim on appeal, in no uncertain terms found, "Appellate counsel's performance is not deficient nor prejudicial for failing to raise a claim which is unlikely to succeed." (Doc. 68 at 14).

Petitioner next claims both the PCR court and the Magistrate Judge misapprehend his argument on the lesser-included offense instruction. (Doc. 73 at 9).  In his Objection, he asserts, "Villalobos's claim is *not* that the trial court erred in failing to instruct on a lesser included offense for the *murder* count. . . Instead, the claim is that the trial court should have instructed on the lesser included for the predicate offense of child abuse." (*Id.*) The Court again summarily overrules this objection.  As detailed above, both the PCR court and the Magistrate Judge clearly understood the claim Petitioner says appellate counsel failed to raise. (*See e.g.*, Doc. 19-3 at 28 ("Immediately following the trial court's oral denial of its request, Defendant clarified that in addition to a lesser included instruction on

felony murder, he was also requesting lesser included instructions as to the predicate offense of child abuse; the trial court confirmed its understanding of the additional request and affirmed its denial of the requested 'lesser-included' instructions.").  The claim that the trial court erred in refusing a lesser-included instruction for child abuse was addressed and rejected because the trial court reasonably found the instruction was unsupported by the evidence.[9]

Petitioner also objects "on the basis that the magistrate judge, rather than determining whether 'the jury could rationally fail to find the distinguishing element of the greater offense,' [] essentially substitutes her own judgement of the evidence." (Doc. 73 at 9).  Petitioner says, "the magistrate judge's own view of the evidence is irrelevant if the jury could rationally have disagreed with her." (*Id.*)  As an initial matter, this objection lacks the requisite specificity for the Court to review; Petitioner fails to specify where the Magistrate Judge inappropriately "substitutes her own judgement of the evidence." Moreover, the Court disagrees with this characterization.  The Magistrate Judge applied the appropriate standard of review in assessing the PCR court's merit-based decision of Petitioner's ineffective assistance of appellate counsel claim and in doing so, merely reiterated the PCR court's assessment of the trial court evidence.

Finally, Petitioner objects that the Magistrate Judge improperly deferred to the state court's finding that there was insufficient evidence presented that could permit a juror to rationally find the element of intent missing.  (Doc. 73 at 10).  The Court disagrees that there was improper deference by the Magistrate Judge, who on federal habeas review, is required to apply a "double deference" to claims of ineffective assistance of counsel. *Murray*, 882 F.3d at 826.   The Magistrate Judge cited the correct legal standard, noting that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather

---

[9] Moreover, the Court finds it inconsequential that the Magistrate Judge may have misunderstood Petitioner's argument on the lesser-included offense instruction because it deferred to the state court's interpretation of its own law that there is no lesser included offense for murder.  Upon this Court's review of the state court's analysis, the trial court did not abuse its discretion (and appellate counsel did not deficiently perform by failing to raise the issue) when it denied lesser-included instructions for murder *or* child abuse, the former which was grounded on an interpretation of state law, and the latter which was grounded in an assessment of the record evidence.

may select from among them in order to maximize the likelihood of success on appeal." (Doc. 68 at 13 *citing Smith v. Robbins*, 528 U.S. 259, 288 (2000)).  To succeed on a claim of ineffective assistance of appellate counsel, a petitioner must show "that counsel acted unreasonably in failing to discovery and brief a merit-worthy issue." *Moormann v. Ryan*, 628 F.3d 1102, 1106 (9th Cir. 2010). "Second, the petitioner must show prejudice, which in this context means that the petitioner must demonstrate a reasonable probability that, but for appellate counsel's failure to raise the issue, the petitioner would have prevailed in his appeal." *Id.*

After holding a hearing on the jury instruction issue, with testimony from both Mr. Villalobos's appellate counsel and a defense IAC/*Strickland* expert, the PCR court ultimately disagreed with the defense expert that the trial record supported a lesser-included instruction for the child abuse charge such that an argument for the same would have been successful on appeal. (Doc. 19-3 at 24; 28–32).  After reviewing the record evidence showing Petitioner's intent, the PCR court correctly stated that Arizona law requires giving a lesser-included offense instruction "if supported by the evidence."  (Doc. 19-3 at 30 (citing Ariz. R. Crim. P. 23.3 and *State v. Detrich*, 873 P.2d 1302, 1305 (Ariz. 1994)).  It noted that "[t]he trial court is in the best position to determine whether evidence supports giving a lesser included instruction.  The trial court determined that the evidence presented did not support a lesser-included instruction."  (*Id.* at 31–32).  The PCR court agreed with the trial court.  It stated that:

> [t]he record demonstrated that the defendant had injured the child on at least three previous occasions; that one incident involved physically shaking the child; that on other occasions his actions resulted in bruising to her face, buttocks and arms.  Defendant's actions on the previous occasions suggest that his conduct on this occasion was intentional and/or knowing, even if the result—the child's death—was not.

(*Id.* at 30).  It then went on to note that under Arizona law, the Arizona Supreme Court would have reviewed an appeal on the issue of the trial court's denial of a request for a lesser-included instruction under an abuse of discretion standard, and under the record before the PCR court, the trial court had not abused its discretion in denying the instruction.

(*Id.* at 32).  In turn, the PCR court found that appellate counsel was not deficient in raising the issue on appeal.  (*Id.*)

In his Reply, Petitioner argues that "the Arizona Supreme Court could have concluded that the trial court abused its discretion by applying the wrong legal standard. The trial court *should have* asked whether a jury could rationally find, based on the evidence presented, that Villalobos acted recklessly . . . Instead, the trial court seemed to ask whether it was fair or appropriate for Villalobos to 'take advantage of his own continuing misdeeds' in failing to seek medical attention for the victim to 'backdoor a lesser included offense or a lesser charge.'" (Doc. 63 at 60).

As noted, on habeas review, this Court applies a doubly deferential standard of review when assessing a state court's merit-based determination of a claim under *Strickland*.  *Murray*, 882 F.3d at 826 (noting "the double deference applicable to AEDPA claims of ineffective assistance of counsel").  Whatever moral judgment may be read into the trial court's denial of Petitioner's requested lesser-included instruction, a reasonable argument is that the trial court applied the correct legal standard in assessing the sufficiency of the evidence, and that appellate counsel was not deficient in failing to raise the issue on appeal because the instruction was unsupported in the face of overwhelming evidence showing Petitioner's intent.  *Harrington*, 562 U.S. at 105 ("When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.").  Petitioner has not met his burden of showing there was "no reasonable basis for the state court to deny relief" under this ineffective assistance of appellate counsel claim.  *Id.* at 98. This objection is therefore also overruled.

### 3.     Ground Three—Appellate Counsel's Failure to Appeal the Limitations Imposed on Defendant's Examination of Mother at Trial

In Ground Three, Petitioner alleges that his appellate counsel was ineffective for failing to argue, on due process and confrontation grounds, that the trial court improperly prohibited him from examining Verdugo on her second-degree murder charge.  (Doc. 1 at 8).  Assessing the claim under state law standards, and without taking additional evidence,

the state PCR court rejected the underlying claim both on its merits and under a harmless-error analysis. (Doc. 18-2 at 4-5). It noted that the second-degree murder charge had been dismissed a year before Verdugo pled guilty, and that the trial court found the charge had not been part of the plea negotiations. (Doc. 18-2 at 5). The PCR court further found that,

> the trial court permitted cross-examination as to the child abuse charge, the underlying facts and Ms. Verdugo's plea agreement. The jurors were aware of the charges, aware of Ms. Verdugo's admission of culpability, aware of her interest as a mother and a culpable party, and were in a position to evaluate her credibility and any potential self-interest.

(Doc. 18-2 at 5). In this way, said the court, "the trial court complied with" confrontation standards in Arizona. *Id.* (citing *State v. Ramos*, 492 P.2d 697, 700 (Ariz. 1972)). The state court further found that even if the trial court had erred in limiting the examination, such error was harmless because Petitioner's confession and the medical examiner's corroborating evidence established his culpability even without Verdugo's testimony. (Doc. 18-2 at 5 ("Whether the death resulted solely from [Petitioner's] punch or from cumulative abuse inflicted by defendant and another, defendant's culpability was established, irrespective of Ms. Verdugo's testimony, involvement and credibility.")). Under *Strickland*, the court concluded that "appellate counsel was not deficient for failing to raise a meritless claim." (*Id.*).[10] The Magistrate Judge similarly assessed the claim, found the claim was unlikely to prevail on appeal, and concluded that the PCR court's denial was "not an unreasonable application of *Strickland* nor *Robbins* because appellate counsel's failure to raise this claim was neither deficient performance nor prejudicial." (Doc. 68 at 16).

Petitioner objects that the R&R (1) "ignores his Confrontation Clause and federal due process claims altogether"; (2) does not address "either of Villalobos's alternative arguments concerning § 2254(d): (a) that the state court did not decide the federal claim, and (b) that even if it did, the decision was an unreasonable application of clearly established federal law"; (3) "improperly found that any evidentiary error (even though improperly analyzed only under state law in the first place) was harmless where

---

[10] The Arizona Supreme Court summarily denied review of this claim.

'defendant's culpability was established' through his confession to striking the victim and the medical examiner's testimony"; and (4) "was wrong to conclude that appellate counsel was justified in omitting the claim on the grounds that it might not have succeeded." (Doc. 73 at 10–11). Petitioner also says the Magistrate Judge erred by failing to address the PCR court's refusal to grant him discovery or an evidentiary hearing on the issue.

Petitioner first objects that the Magistrate Judge "ignores his Confrontation Clause and federal due process claims altogether." (*Id.* at 10). Ground Three of Petitioner's Petition states,

> I was denied my 6th Amendment right to effective assistance of appeals counsel because she did not raise the issue that I was denied my 6th Amendment right to cross-examine my co-defendant Verdugo about bias and motive to lie. Also, one of my defenses was that I did not commit the murder. By not letting my lawyers ask Verdugo about the dismissed murder charge, I was denied my 5th and 14th Amendment due process right to present evidence essential to my theory of the case.

(Doc. 1 at 8). Petitioner says his Ground Three raises a "two-part claim"; first, that the trial court violated his due process and confrontation rights by restricting his cross-examination of Verdugo, and second, that his appellate counsel performed ineffectively by failing to raise the claims on appeal. (Doc. 63 at 51). In their Answer, Respondents characterized this claim only as a Sixth Amendment ineffective assistance of appeals counsel claim. (Doc. 11 at 11–13). Petitioner's counseled Reply argued "both subparts to this claim." (Doc. 63 at 61). The R&R facially assesses Ground Three only as Sixth Amendment ineffective assistance of appeals counsel claim. (Doc. 68 at 15–17). However, the Magistrate Judge's conclusion on the ineffective assistance of counsel claim turned on the strength of these omitted claims, which both the PCR court and the Magistrate Judge found lacked merit and would have been harmless error. Accordingly, the Court finds any error in failing to assess free-standing confrontation and due process claims on federal habeas review is harmless because these claims would have failed on the merits and/or any error would have been harmless.

Petitioner next argues the R&R does not address his argument that the state court

did not decide the federal claim (and thus this Court should apply a *de novo* review), and even if it did, the court unreasonably applied clearly established federal law.  When a Petitioner presents a federal claim to a state court and it is denied, it is presumed that the state court adjudicated the claim on the merits—thus warranting a federal court's § 2254(d)(1)'s deferential standard of review—at least in the absence of any indication or state-law procedural principles to the contrary.  *Harrington v. Richter*, 562 U.S. 86 (2011).  This presumption usually applies even when a petition alleges violations of both state and federal law and the state court decision only explicitly addresses the state law ground.  *Johnson v. Williams*, 568 U.S. 289, 292–93 (2013) (finding there is "no reason why the *Richter* presumption should not also apply when a state court opinion addresses some, but not all of a defendant's claims").  The *Williams* Court noted the presumption was justified for a number of reasons, e.g., because states courts frequently view a line of state precedent as fully incorporating a related federal constitutional right; because a state court may not regard a petitioner's fleeting reference to a federal provision as sufficient to raise a federal claim; or because the state court may simply regard a raised federal claim too insubstantial to warrant discussion.  *Id.* at 299.  Only in "unusual" circumstances did the Court find this "strong" presumption may be overcome such that the claim should be considered *de novo* by a federal habeas court (or, if asserted by the State, should be regarded as procedurally defaulted).  *Id.*  Such circumstances include where the state standard is less protective than the federal standard; where "the state standard is quite different form the federal standard, and the defendant's papers made no effort to develop the basis for the federal claim"; and where "a provision of the Federal Constitution or a federal precedent was buried in a string cite."  *Id.* at 301–02.

Here, the state court resolved Petitioner's underlying claim that the trial court impermissibly limited his examination of Verdugo under Arizona state law even though Petitioner challenged the limitation under both state and federal law.  The Court nonetheless finds the presumption that the state court decided the federal claim on the merits applies because Arizona law has, at the very least, incorporated the federal right of

confrontation, and may even provide broader protections to its accused than the Federal Constitution would.  In *State v. Dunlap*, the Supreme Court of Arizona, sitting *en banc*, discussed the scope of an accused's right of cross-examination in Arizona.  608 P.2d 41 (Ariz. 1980) (en banc).

> The Sixth Amendment right of an accused to confront the witnesses against him is a fundamental right made obligatory on the states by the Fourteenth Amendment. *Pointer v. State of Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). A primary interest secured by the clause is the right of cross-examination. *Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). Although the trial court has discretion in deciding questions of the scope of cross-examination, the policy in this state has always been to allow a broad scope of cross-examination in order to comport with the confrontation right.  *State v. Morales*, 120 Ariz. 517, 587 P.2d 236 (1978); *State v. Ramos*, 108 Ariz. 36, 492 P.2d 697 (1972); *State v. Holden*, 88 Ariz. 43, 352 P.2d 705 (1960).   Since the right is guaranteed by the Constitution, a conviction will be reversed if cross-examination has been unreasonably limited.  *United States v. Norman*, 402 F.2d 73 (9th Cir. 1968), cert. denied, 397 U.S. 938, 90 S.Ct. 949, 25 L.Ed.2d 119 (1970). See, e. g., *State v. Morales*, *supra*; *State v. Briley*, 106 Ariz. 397, 476 P.2d 852 (1970).

*Id.* at 42.  Upon review of the case law, the Court finds that Arizona law is as protective, if not more, of an accused's right to cross-examination.   *De novo* review of the claim is therefore not warranted and the Magistrate Judge did not err in applying §2254(d)(1)'s deferential standard of review.

Nor did the PCR unreasonably apply clearly established federal law to the claim. Petitioner argues "[a]ccording to the PCR court, the fact that Villalobos was permitted to ask Verdugo about her plea agreement and the disposition of the *child abuse* charges she faced meant that restricting inquiry into the murder charge was not erroneous.   This reasoning cannot be reconciled with *Van Arsdall*, *Davis*, or *Chambers*."  (Doc. 63 at 69– 70).  Beyond this statement, Petitioner does not elaborate on how the PCR's conclusion was contrary to applicable federal law.  Federal law, like Arizona law, guarantees criminal defendants the right to cross-examine witnesses regarding their "biases and motivations to lie." *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc); *Davis v. Alaska*, 415 U.S. 308, 318 (1974).  *See also Chambers v. Mississippi*, 410 U.S. 284, 294

(1986) (noting the right to due process includes the "rights to confront and cross-examine witnesses and to call witnesses in one's own behalf").  But both Arizona and federal law recognize that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Ramos*, 492 P.2d at 700 (noting that a "trial court has discretion" in placing limitations on cross-examination).  Where a trial judge allows some inquiry into "the biases and motivations to lie" but limits the scope of that inquiry, a reviewing court reviews for abuse of discretion, and considers (1) whether the trial court excluded relevant evidence; (2) whether "there were other legitimate interests outweighing the defendant's interest in presenting the evidence"; and (3) whether the jury had "sufficient information to assess the credibility of [each] witness."  *Larson*, 495 F.3d at 1102–03.

In this case, both the PCR court and Magistrate Judge extensively assessed whether the jury had sufficient information to assess the credibility of Ms. Verdugo.  As the Magistrate Judge noted, "the issue of Ms. Verdugo's credibility and any motivation for potentially falsifying her testimony was thoroughly explored for the jury." (Doc. 68 at 16).  Upon examination from defense counsel, Verdugo admitted she had been arrested, originally charged with "a class two felony," a "[c]lass three child abuse felony," and had already spent three months in jail.  (Doc. 60-11 at 27–28).  She further acknowledged she had entered a plea agreement to lessen her jail time exposure (*id.* at 28); that under the terms of her plea agreement, she was eligible for lifetime probation after a year of imprisonment (*id.* at 30); and that without the plea agreement, she could potentially receive a 24-year jail sentence if convicted on the original charges.  (*Id.* at 31).  Indeed, despite the trial court's questioning limitations, it appears that defense counsel was allowed to ask Ms. Verdugo to confirm she had been charged with a Class 2 Felony and its attendant jail time.  Her self-motivation and bias was therefore thoroughly explored for the jury.

The PCR court did not unreasonably apply clearly established federal law; to the

extent this argument was not explicitly addressed in the R&R, it is amended accordingly, and this objection is overruled.

Villalobos next objects to the R&R's Ground Three recommendation on the grounds that "it improperly found that any evidentiary error (even though improperly analyzed only under state law in the first place) was harmless where 'defendant's culpability was established' through his confession to striking the victim and the medical examiner's testimony." (Doc. 73 at 11).  As an initial matter, this objection is erroneously stated: the Magistrate Judge did not conclude that Petitioner's culpability was established through other evidence, the PCR court did.  (*See* Doc. 18-2 at 5).  In doing so, as discussed, the PCR court found

> Defendant has admitted that he punched the victim in the stomach with a closed fist and this blunt force trauma was corroborated by the ME.  The child died within hours.  Whether the death resulted solely from the punch or from the cumulative abuse inflicted by defendant and another, defendant's culpability was established, irrespective of Ms. Verdugo's testimony, involvement and credibility.

(Doc. 18–2 at 5).

The constitutionally improper denial of a defendant's opportunity to impeach a witness for bias, like other Confrontation Clause errors, is subject to a harmless-error analysis.  *Van Arsdall*, 475 U.S. at 684.

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.*  As discussed above, in assessing any prejudice stemming from the improper limitation, the PCR court took the *Van Arsdall* factors into account and concluded that Petitioner's guilt was "established" notwithstanding any of Ms. Verdugo's testimony.  This is not an

unreasonable application of federal law.  This decision was not improper or unreasonable, and the objection is overruled.

Next, Petitioner argues that the Magistrate Judge's conclusion that "Ms. Verdugo's credibility and any motivation for potentially falsifying her testimony was thoroughly explored for the jury" is "wrong."  (Doc. 73 at 12).  Petitioner says that "[m]ost of the facts relied upon by the magistrate judge—e.g., Verdugo's guilty plea, the reduction in her sentencing exposure from 15 years to possible probation—did not turn in any way on her testimony at Villalobos's trial." (*Id.*)  Petitioner speculates that had the jurors known "about the murder charge that had been dismissed without prejudice and that still hung over her head," as opposed to just a reference to a Class 2 felony and jail sentence that accompanied it, these facts would have changed the case's outcome.  (*Id.* at 13).  As discussed above, however, the PCR court, in applying *Ramos*, concluded otherwise.  Petitioner has not shown why this conclusion is unreasonable.

For similar reasons, Petitioner's objection to the R&R's recommendation to deny relief on Petitioner's ineffective assistance of appellate counsel claim fails.  Petitioner argues that the underlying claims would have likely succeeded under *Ramos*.  As stated above, the PCR court, in accordance with both state and federal law, reasonably concluded otherwise.  Petitioner has not met his burden of showing this was an unreasonable application of federal law, and thus this objection is also overruled.

Finally, Petitioner argues that the Magistrate Judge ignored his argument that the PCR court should have allowed discovery or an evidentiary hearing on this claim.  Petitioner claims that his appellate attorney should have provided testimony as to why the claims were omitted.  The Court overrules this objection.  As discussed, the PCR reasonably found that the claims lacked merit on the record before it.  No further evidentiary development or testimony from appellate counsel would have altered that conclusion.

### 4.    Ground Four—Counsel's Cumulative Mistakes Violated His Sixth Amendment Right to Counsel

Finally, Petitioner objects to the Magistrate Judge's recommendation that Ground

1  Four be denied.  In rejecting his claim, the Magistrate Judge extensively reviewed the law

2  and concluded that no clearly established Supreme Court precedent existed at the time of

3  the post-conviction proceedings that would require the state court to cumulatively assess

4  the prejudice caused by counsel's deficient performance.  (*See* Doc. 68 at 17–24).  She

5  further found that even if there were, the state court's determination was reasonable under

6  28 U.S.C. § 2254(d) because the alleged errors were unlikely to be prejudicial in light of

7  Petitioner's confession.  (*Id.* at 24–25).

8       Petitioner first objects by pointing to Supreme Court and federal circuit cases that

9  have analyzed prejudice cumulatively.  (Doc. 73 at 10–11).  Petitioner does not, however,

10  point to any Supreme Court holding that requires a state court to conduct a cumulative

11  prejudice assessment.  As noted, "clearly established Federal law for purposes of

12  § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [Supreme] Court[]

13  decisions." *White*, 572 U.S. at 419 (internal quotations omitted).  This objection is therefore

14  overruled.

15       Petitioner next again objects that the Magistrate Judge gave undue weight to

16  Petitioner's confession in finding that the state court's determination that counsel's alleged

17  errors were unlikely to be prejudicial was not an unreasonable application of *Strickland*.

18  For the same reasons discussed in Section V.1.A., this objection is also overruled.

19  **VI.**   **Conclusion**

20       Accordingly,

21       **IT IS ORDERED** that Petitioner's Objections to the R&R (Doc. 73) are

22  **OVERRULED**.  Magistrate Judge Bibles' Report and Recommendation (Doc. 68) is

23  **PARTIALLY AMENDED,** as noted in this Order, and otherwise **ACCEPTED** and

24  **ADOPTED** as the Order of this Court.  The Petition for Writ of Habeas Corpus pursuant

25  to 28 U.S.C. § 2254 (Doc. 1) is **DENIED** and **DISMISSED WITH PREJUDICE**.

26       **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing

27  Section 2254 Cases, a Certificate of Appealability and leave to proceed in forma pauperis

28  on appeal are **DENIED** because reasonable jurists would not find this ruling debatable,

and because Petitioner has not made a substantial showing of the denial of a constitutional right.

**IT IS FINALLY ORDERED** that the Clerk of the Court shall terminate this action and enter judgment accordingly.

Dated this 10th day of February, 2022.

Honorable Diane J. Humetewa
United States District Judge